Good morning your honor. Good morning. Olu Orange on behalf of plaintiff appellant Travis White. I'd like to of course reserve whatever time I have for rebuttal. May it please the court. The question that every other question in this case is subsumed by is were the defendants permitted to engage in a Travis White because of what he said. This is a First Amendment case. Travis White engaged in constitutionally protected criticism of the police and attempted weapons frisk because of his criticism devolved into him being tasered and arrested. His First Amendment claim was dismissed on summary judgment and at trial the jury found against him on his Fourth Amendment claims in the absence of consideration of his First Amendment claim that his speech was protected and not the proper basis for weapons frisk. When asked at trial. Counsel let me let me just stop you because I'm not sure I'm with you even to this point. Sure. Let's say that the only thing that had happened to to Mr. White was that he had got they told him get out of the car we're gonna do a pat-down okay and that's all that happened none of the other stuff that followed occurred right the tackle the tasering the arrest. Are you saying that your client would have a valid First Amendment claim just on the basis of hey the police asked him to get out of the car and did a pat-down and that was at the end of it? Yes under under Ramirez yes and what Ramirez tells us this court's opinion in Ramirez is that you cannot base a weapons frisk on a cursory opinion that the or a gave you concerns about officer safety there there has to be actually some basis to believe that he was armed and dangerous. I guess I'm just trying to focus on from a First Amendment standpoint. Yes. I understand that the interest you you have as the plaintiff here is I don't want the officer to do something that's gonna chill my my right the right my right to engage in First Amendment speech but I guess I would have thought that the officer has to do a lot more than just ask you to get out of the car and do a pat-down in order to basically shut you up. Well the way I understood the question was that the officer actually did the pat-down. Right. Okay and if the officer engages in a frisk of you if he violates your personal integrity under the Fourth Amendment to be free from actual invasion in that regard because of something that you said then yes. I guess that's what I'm having a problem with. Doesn't the officer have to do something a significant enough action against you to silence you? Because I wouldn't be silenced just by Officer Pat patting me down. I'd probably keep keep cussing him out right? Well if I get tackled and tasered and arrested I'll probably shut up at that point but I'm just saying to me that if all that happened was the pat-down I don't see how how would you have a valid First Amendment claim if that's all that occurred? Well in this situation that's not all that occurred and so if you look at Hopkins versus Bonbashino an opinion pinned by Judge Reinhart what it tells us is that you analyze a Fourth Amendment seizure in different stages and the first stage here was that Mr. White was pulled out of the car. The next stage was is that when they took him to the back of the car and they attempted to frisk him that's when he turned around and asked what was going on and they tasered him and beat him up. Okay now each one of those levels of detention has to be assessed separately. That's exactly my problem with your First Amendment claim because I'm saying if all that had happened was the pat-down I don't to me that just doesn't sound like enough to silence someone. What what prompted the escalation in my view of your client's encounter with the police was when he spun around after he was trying when they were trying to handcuff him and at that point it seems to me no reasonable jury could infer that the officer was based on what he was saying as opposed to the fear that hey the guy's about to attack me. He just spun around when I was trying to arrest and when I was trying to handcuff him. Well that's a concern that was addressed specifically by a case Skoog versus County of Clackamas. This is a Ninth Circuit opinion from 2006 and what Skoog addressed was the notion of having to exclude other reasons for probable cause existing aside from the intent to or pleading the and what Skoog really explained was that you don't have to. To the extent that there is the potential basis for a jury to conclude that the objective was to silence the person then the existence of other probable cause factors doesn't keep you from being able to set forth a claim for the violation of the First Circuit question about whether a pat-down search would be sufficient under our case law and Skoog requires an objective test whether a person of ordinary firmness would be chilled by whatever the activity is and are there any cases from this circuit or that you're aware of from the Supreme Court? I'm not so that's why I'm asking the question that hold one way or the other on whether a pat-down is an action that would chill or silence a person of ordinary firmness from exercising their First Amendment rights. I'm not aware of any the only two cases that I can point the court in the direction of would be Ramirez which I think incorporates Terry when it says that the Fourth Amendment tolerates no frisk in the absence of a belief that the person is armed and dangerous and I understand that that refers to the Fourth Amendment as opposed to the the First Amendment however I think the issue here is that these officers have to have been in the lawful performance of their duties. Well that's a different question what what I was trying to get at was whether Judge Watford is a person of ordinary firmness I mean I I would be chilled by having police take me out of a car and and maybe I'm I'm extraordinarily not firm in my ability to speak but but we have to find that objective standard somehow at least I take scoop to be saying that there's an objective standard the ordinary person with their First Amendment opportunity be chilled by this action. Well I would argue that if if the pat-down is indeed a violation of their Fourth Amendment rights then it's not unreasonable to believe that the violation of the Fourth Amendment rights would also chill First Amendment expression. Well the problem it seems to me in this case is that the Fourth Amendment case was tried and you lost and so I guess I'm having difficulty seeing how that is helpful to you. It's helpful to me because the Fourth Amendment case was tried in the absence of the First Amendment claim and if the jury had been told that what Mr. White said and how he said it was protected and it was also a basis for him to recover and it wasn't a basis for him to be seized or searched then I think that there would have been more of a balance there and the jury would have been able to consider the facts in all of the law that related to the factual situation but to have a Fourth Amendment case where someone is snatched from the car searched and tasered at the back of the car because of what they said and the officers admit that they did this because of what they said. If I could quote for a minute if there's any question about that exactly what the officer said this is in the reporter's transcript 703 page 703 lines 1 through 14 all right you said you were going to investigate pat him down why were you going to pat him down given his behavior it's in my experience people who speak to us in a manner like that it's not uncommon that with their verbal interaction with us can often sometimes dictate their physical action with us so it would be an officer safety issue for me to pat him down before we continue talking to him and investigating ultimately that this is the First Amendment issue is why they took him to the back of the car they weren't in the lawful performance of his duties trying to do a weapons frisk because of what he said so if we adopted that rule that you've just articulated wouldn't that mean that an officer could basically never make any investigatory decision based on something that the suspect that they're investigating has said no what it would mean is that the content of what the suspect said would have to indicate that there was reason to believe that the person may be armed and dangerous so there's a difference between I hate the police and you're precisely and there was nothing that mr. white said that indicated that he may be armed and dangerous and what the officers did as indicated by their own testimony is they took him back there to try to do a weapons frisk on him which requires they should be armed and dangerous because of what he said you just can't do that how did the pat-down come into the case the only thing I saw was with respect to a request for jury instructions and even the jury instructions that were requested didn't have the words reasonable suspicion armed and dangerous in them so how is this presented to the district court it was presented to the district court at the end the page numbers transcript 826 through 831 I requested from the district court and this is also a excerpt record 30 the 9th circuit model instruction 9.11 that included a search of the person portion where what I asked for was the district court to inform the jury that the search of the person had to be reasonable and when I asked for that I explained that they searched him for weapons without any notion that or any information that would properly be the basis to believe that he was armed and dangerous that was specifically was argued to the court and that was the instruction that was requested what was the district court rationale for rejecting that instruction district courts rationale for rejecting the instruction was that the officer may not have actually started and performed a frisk and she said that the mr. white had testified that he didn't feel the I'd argue that the officer began the search but her conclusion was that if there was no search there's no need for a search instruction my position is well they need to know that the officer has to be in the lawful performance of his duties and if he's not in lawful performance of his duties when he's attempted to search him then mr. white turn it around and ask him why he's being searched shouldn't be the basis for any finding against him on the 4th amendment complaint though you did not have a stand-alone fourth amendment claim based on an unreasonable search did you know what I did say that he was searched unreasonably and in the in the the heading which which I know the heading doesn't actually convey or mean too much it said unreasonable search and seizure and we said that he was searched without lawful basis well but I think it's count to at least of the I think it's the first amendment complaint first the fourth amendment claim was based entirely on an unreasonable seizure and I so I my question for you is why why were you entitled to that instruction on an unreasonable search if you didn't have a stand-alone claim that well we don't need a stand-alone claim we actually so long as the facts in the complaints support the cause of action then the cause of action exists and we actually did say that he was searched without lawful basis in the paragraph 42 on AER 44 does say it seizure use of excessive force and in caps search were without reasonable suspicion probable cause etc that was list the search as well as the seizure and the defendants didn't move to for summary judgment on that that issue was still alive at trial there was evidence that came into the that we felt would have lent itself to the notion that Mr. White was searched or attempted to be searched when the officers weren't in the lawful performance their duties so that means when he turned around to ask what was going on he was really doing no wrong so you have about a minute and a quarter if you want to save some of it for rebuttal thank you I will save it thank you we'll hear now from Lee County okay please the court good morning honest Trevor Graham on behalf of the county of San Bernardino and Donald Rusk and Mark Addy it's our position that from the outset of this contact which turned into a detention that mr. white was acting in a manner possible for the police officers which raised their safety concerns from the very beginning let me ask you specifically it seems to me that the officers justified the frisk by what was said to them and not by any threatening action at least that's how I read is that you're reading or was some action on his part that I missed well action being action like trying to reach for something in his pocket or taking a swing at an officer something of that nature or was it just what he said given the totality of the circumstances I think that you can get an officer safety issue from any factor that's not what I asked was there anything specific that was done other than things that were said that was specifically relied upon well it's a yes or no question yes what were the actions apart from what was said that were specifically relied upon there were plates that were covered that the officer looked to in the context especially which we had here where there was some information that the officers had about recent doorknock burglaries cars are used with covered plates and in this case there was paper plates covering and how does that how does the paper plate play into the question of dangerous weapons well I'll get there I was gonna say that people that are committing crimes oftentimes and this came out of trial where we'll use paper plates to cover up their legitimate place in order to hide their identity because of the fact that they're committing crimes and they know that if their plates are not covered that police officers will build to run them and catch them but also the fact that mr. white was at the time wearing gloves also contributed to the officers officer safety state of mind people are more dangerous wearing gloves well I'm not suggesting that any one factor of alone would be sufficient however I did ask what other things were done I asked about his actions well presumably mr. white did cover his own place and presumably he did put on his gloves by himself so is the information that the police had in the absence if he hadn't said anything that suggested that he was angry the they're seeing that the signs of a of an accident on the car the covered plates the his looking like or being dressed like the the burglar that they suspected if there but only that would they have had sufficient to to frisk him what would that have been sufficient to objectively raised the the level of armed and dangerous without any speech I think it's a close call I'm not sure well what they said something nice like it's a beautiful day can I help you would they I mean that's kind of even going further than judging kudos example whether the things other than angry speech I hate you guys I've always hated you guys with expletives added is that really the tipping point here you're saying had mr. white said something like a wonderful day it is what they thought he was armed and dangerous because it's suspicious that someone would be that nice to the police I can't go that far I think it would have been a different stop under those circumstances in fact I think under those circumstances he probably wouldn't have well possibly not even had to get out of the car to produce the identification that they asked for but because and here's one other thing and this isn't exactly the speech I don't think that you're referring to when you said something out of the speech because I'm not talking about him cursing at them but at the outset they asked hey look it looks like there's been an accident here we'd like to get your information can I have your driver's license insurance and registration and then the response was not only with speech according to our officers that he said why you guys always talking with me it was no no action I'm not going to give you what you want well suppose that had been the exchange we want this information and he had politely said no thank you I don't care to do that would they have had the reason to fear for their safety and to frisk him or do we get or do we roll back into the angry comments well I think that the the non-compliance what triggers in the officers mind and obviously the speech played into it also is that he's being evasive he and that combined if we're taking the totality which is the covered up plates which you know the whole thing is leading our officers at the scene to believe look we've got a right to ask you some questions you're not complying with a simple request we asked for every other motorist right and so far none of that speaks to whether they have a right to frisk his body if somebody says to you I want to see this information or please tell me your name and you say politely no I don't care to do that does that give officers a reasonable fear for their safety so that they can frisk you that's standing alone no and but I would like to point out though that there's a white's claim is that he basically said on one occasion after he had been asked to get out of the car he said I hate the effing police wondering about this I mean the district court seemed to think it was important that that you only take the facts that were alleged by the non-moving party here mr. white and didn't consider what the police had testified to is there any case supporting that or is there any case going the other way I mean it was very odd here because the the plaintiff here disavowed cursing at the police and it was the the police who testified that they heard him cursing right how does that affect our review of the district court summary judgment determination well I I think that the way that the case was briefed and argued I mean if she's going to take all reasonable inferences toward the non-moving party on that particular issue and they were the non-moving party I believe that she believed that that his version was more favorable to him and so what if that's wrong what if the police version is actually more favorable to the plaintiff don't we have to take all the facts that were in the record at the time of the summary judgment because whether it advertently or inadvertently if the moving party supports the non-moving parties case don't don't we have to look at all of it well there any case that says that because I was looking for one where that was similar to this where the moving parties facts were more helpful to the non-moving party on one claim did you find any case in that vein no I what comes to mind is something that probably is not it would be cool feel where the judge can look at the whole record at the moment this is a different issue I think that's at the district court level for the judge and sua sponte grant summary judgment in favor of the non-moving party let me ask you another question that harkens back to something in discussion with judge Watford earlier and that is on what do we do with the objective test let's assume which you do not concede I understand that that the police frisked mr. white on account of what he said and I and I know that's not your position but is a frisk an action that would chill an ordinary person or a person of ordinary firmness however that was stated from pursuing their speech well I would tend to agree with judge Watford but it was him on the spot that he is a person of ordinary feelings in that kind of situation that he would go right ahead and keep talking I it's a how do we know what a person of ordinary firmness would do I couldn't find any specifically on this have you found any well unfortunately it's not coming to mind at the moment but I'm sure I could dig it up in my brief it would be in our reply we are an answering brief I think that the points that we were relying on are that the arguments plaintiffs made in favor of a first-member violation which is the the closeness the proximity in time between the speech and the action and the amount of speech and the discrepancy between what mr. white says he said which was one isolated account just upon being removed from the car and then you still have to travel to the back of the car if there's still the interaction between deputy Addy and mr. white before the actual hands-on and that was after the deputy gave him an opportunity to just put his hands on the car and he refused to do so I'm not sure I'm answering your question as well as you'd like because the first amendment claim really turns on stuff that happens before he gets to the back of the car it's the decision to make him get out and do the frisk is what prompts everything right to happen afterwards so I really am interested in your best case I think a reasonable jury certainly could infer that it was his speech that caused the officers to want him to get out of the car and do the pat-down well I'm not sure about is whether that's enough to you know to cause somebody to stop stop speaking well and what I could say is that it says it's not reasonable to us for someone to believe that it was the his speech that made the cause the car he the officers had a complete right to get him out of the car upon his being unable to produce a valid driver's license and we do not believe that the case is cited for the propositions that this was not driving on a highway we don't think those look you got summary judgment on this jury could go either way you might well be right that you could persuade a jury that the officers did not make him get out of the car just because of the speech but it seems to me it's close enough that you would let that go to the jury if you thought that doing the pat-down was enough to chill someone's exercise of the First Amendment rights and I guess I don't feel like you're helping us very much with the most analogous case you can you can point us to on that well all I can do pretty much without the the ideal case at the tip of my tongue would be to try to argue the facts under what's been briefed and I just there were so many alternative reasons to ask for this pat-down search and there is the discrepancy once again between what mr. white and what the officers say was actually said by mr. white but I remember this was both booted out on summary judgment so at this point if there's a factual dispute which obviously there is the only question really for us is whether there was a genuine issue to make it improper to have granted summary judgment we don't decide who is more persuasive if there's evidence going both ways and I think that may be where these questions are coming from well at the summary judgment phase the facts I guess were in dispute they just weren't presented in a because we they presented from their position hey this is all we did this is best for us this is all we did we said you know I hate the FM police that's all I said on one occasion after I've been removed from the car that's it and so please say otherwise the police said otherwise and so that takes us back to the legal question that judge Akuta was asking you about which is does the presented because what's good for your fourth amendment claim may be bad for your First Amendment claim and I think that's maybe what happened here is that both of you were arguing your best Fourth Amendment claim which turned out to be exactly the opposite of what was helpful to you in your First Amendment claim and rather than let them both go to the jury as alternative ways to look at the facts the court simply took away one of them and I think that's maybe where the issue lies here did defendant argue I mean did the plaintiff argue in the alternative to the I do not believe that no so the plaintiff never said well this is what we think happened but in the alternative if the police are right and he was cursing throughout the whole thing then we want the benefit of that no I do not believe that happened and again you know I don't have the case but our position is that that's the way the case was briefed regardless of how it was briefed we had sufficient alternative speech-neutral reasons for you know getting him out of the car walking him back to the back of the car asking him to spread his legs voluntarily to conduct a quick pat-down we had reasons totally independent of speech and you know while it did contribute to it it wasn't the determining factor it was just the totality of the circumstances thank you counsel your time has expired and I think we understand your position thank you mr. orange you have about a minute remaining your honor just to really quickly answer a few questions and did not only at one point say I hate the effing police actually he said it on multiple occasions as well as many other things and these were all part of the record on summary judgment I'll tell you exactly where they were but did your client argue that I understood that your client argued I only said it this one time no it's about the other statements no that's that's not what happened in his deposition at one point he said this is all I said and then at another point he said I also said this and at another point he also he said I also said this those are at their most easily found in the opposing side supplemental excerpts of record pages 82 and 83 they're in the four page exhibits page 204 lines 10 through 15 question at what point did you say what is it I hate the effing police or something like that answer when he was pulling me grabbing me out of the car 205 lines 12 through 18 okay he brought you to the back of the car and you said that's the point when you said what answer I can't stand the effing police 209 lines 3 through 8 he also said why are you doing this I don't deserve this I'm just on my lunch break I'm not a criminal all those things were presented in the record on summary judgment as to whether or not the district court should have considered the moving parties facts as well as the non-moving parties facts on summary judgment the answer is yes all facts have to be considered and all reasonable inferences have to be drawn in case did you find a case analogous to this one where the the moving parties facts were more favorable than the non-moving parties fact I couldn't find one no the court case but it doesn't involve facts versus facts it involves testimony versus video and in Scott versus Harris what the court said is where there's a video that just clearly contradicts a version of the facts then you go with the video which is actually kind of important here because their version of the facts is that he was boisterous and crazy and all these other things while he was walking from the side of the car to the back of the car but the video clearly shows that he just walked from the side of the car to the back of the was what he said counsel you have exceeded your time thank you thank you the case just argued is submitted and we very much appreciate the arguments by both counsel it was very helpful
judges: Graber, Ikuta, Watford